UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                          :

**DONOVAN ANDREW SMITH SHELDON**,
                                          :

                     Plaintiff,
                                          :

                                          :    **MEMORANDUM DECISION AND ORDER**

            – against –
                                          :    1:22-CV-03778 (AMD)

                                          :

**COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION**,
                                          :

                     Defendant.    :
------------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff challenges the Commissioner of Social Security's decision that he was not disabled for the purpose of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  For the reasons below, I grant the plaintiff's motion for judgment on the pleadings, deny the defendant's cross-motion, and remand the case for further proceedings.

## BACKGROUND

The 32-year-old plaintiff has suffered from Crohn's disease since March 2016, and was forced to leave college because of the severity of his symptoms, which have required multiple hospitalizations.  (Tr. 37–39, 55–56, 343.)  He has acute pains at least two to three times a week for six to eight hours, wakes up multiple times a night from diarrhea, and must use the bathroom five to six times a day.  (Tr. 40–47.)  The plaintiff filed for SSI benefits on August 11, 2016, claiming he was disabled due to Crohn's disease and vertigo.  (Tr. 54.)  The claim was denied, and the plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 63–68, 70–72.)

Dr. Andrew Blank, a gastroenterologist, began treating the plaintiff on April 27, 2016, when the plaintiff was 25 years old. (Tr. 343.) Dr. Blank referred the plaintiff to Dr. Melissa Alvarez-Downing, a surgeon at the same hospital. On October 4, 2016, Dr. Alvarez-Downing removed a portion of the plaintiff's bowel to alleviate blockages and diagnosed him with Crohn's disease. (Tr. 271–272, 725.) The plaintiff continued to undergo procedures and follow-up colonoscopies through February 2017 to treat his symptoms. (Tr. 357–60, 719–24.)

On February 15, 2017 a consulting physician, Dr. Benjamin Kropsky, concluded after a physical examination that the plaintiff would "require further surgery," "still has occasional vomiting . . . one to two times per week[,]" could "rise from chair[s] with mild to moderate difficulty[,]" and was "limited in household work due to the pains in his lower abdomen and pelvic region and fatigue from Crohn's disease." (Tr. 339–40.)

On January 28, 2019, Dr. Blank filled out a questionnaire about the plaintiff's condition. He opined that Crohn's Disease would cause the plaintiff to be "off task" for fifteen percent of the workday and absent "[a]bout two days per month[.]" (Tr. 812.) In response to the question, "Will your patient sometimes need to take unscheduled restroom breaks during a workday? If yes, how often do you think this will happen?" Doctor Blank checked "yes" and wrote "1-2/year," for an average length of ten minutes. (Tr. 811.) Dr. Blank noted that the plaintiff's need for a restroom break would be "immediate"—in other words, that he would have no advance notice. In response to the question, "Will your patient also sometimes need to lie down or rest at unpredictable intervals during a working day? If yes, how often do you think this will happen?" Dr. Blank checked "yes" and wrote "1-2x/ year." (Tr. 811–12.)

The next day, on January 29, 2019, the plaintiff appeared with counsel for a hearing before ALJ Robert R. Schriver. (Tr. 33–53.) The plaintiff testified that he had severe abdominal

2

pain two to three times a week lasting approximately six to eight hours at a time, that he woke up multiple times every night with stomach cramps, and had five to six bowel movements a day, for which he must get to the bathroom "immediately." (Tr. 40–41, 44–45.) Indeed, the day before the hearing, Dr. Blank told the plaintiff that his most recent CT scan showed anal swelling and he may need another surgery to remove more of his intestines. (Tr. 42–43.)

A vocational expert ("VE") also testified at the hearing. (Tr. 46–51.) Based on the plaintiff's symptoms and need for ready access to a bathroom, the VE concluded that the plaintiff could work as an addresser, a document preparer, or a ticket counter. (Tr. 47.) But the VE also testified that employers would not hire someone for these positions who missed more than one day of work per month or who spent more than 15 percent of the day "off task." (Tr. 47–48.)

On February 20, 2019, the ALJ denied the plaintiff's claim. (Tr. 15–30.) The ALJ determined that the plaintiff had Crohn's disease but not vertigo (Tr. 20–21), and that the Crohn's disease did not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). The ALJ also found that the plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except he could "only occasionally stoop, kneel, crawl, crouch, balance, or climb." *Id*. Finally, the ALJ concluded based on his assessment of the record and the plaintiff's testimony, that the plaintiff would require no more than one day of leave each month. *Id.*

In making these determinations, the ALJ gave different weights to the different medical opinions in the record. (Tr. 25.) He gave the opinions of the plaintiff's treating physician, Dr. Blank, "partial weight," because the "evidence does not support Dr. Blank's opinion regarding the frequency of time of task [sic] and absenteeism." *Id*. The ALJ did not cite any specific evidence contradicting Dr. Blank's opinion. *Id*.

3

Conversely, the ALJ gave the opinion of the independent consultative examiner, Dr.

Kropsky, "great weight, because he has program knowledge with regard to the requirements for

establishing disability under the regulations of the Social Security Administration." *Id*. While

the ALJ found the VE's testimony that a person in the workforce would not be able to miss more

than one day of work per month "reasonable" (Tr. 26), he determined that the plaintiff's

condition did not prevent him from being gainfully employed. He adopted the VE's conclusion

that the plaintiff could find work as an addresser, document preparer, or ticket counter if he had

one absence a month and spent less than fifteen percent of the day "off task." (Tr. 21, 25–26,

47–48.) The ALJ determined that the plaintiff was not disabled under § 1614(a)(3)(A) of the

Social Security Act; in other words, he was not prevented from "engag[ing] in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

. . . has lasted or can be expected to last for a continuous period of not less than twelve months."

(Tr. 27.)

On April 6, 2020, the Appeals Council denied the plaintiff's request for review. (Tr. 6–

8.) On July 5, 2022, the plaintiff appealed to this Court. (ECF No. 1.) Both parties have moved

for judgment on the pleadings. (ECF No. 15, 16.)

## LEGAL STANDARD

A district court reviewing a final decision of the Commissioner must "determine if there

is substantial evidence, considering the record as a whole, to support the Commissioner's

decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108,

112 (2d Cir. 2009) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). The

Commissioner's factual findings must be upheld if there is substantial evidence to support them.

42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means relevant

evidence [that] a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

The court cannot defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188–89 (2d Cir. 2004) (alteration in original) (citation and quotation marks omitted). "[L]egal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). The court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citing *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999)); *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).

## DISCUSSION

The plaintiff claims that the ALJ did not weigh the medical opinions in the record or determine his RFC properly. (ECF No. 11 at 10–17.) Specifically, he argues that the ALJ incorrectly assigned "partial weight" to the opinions of the treating gastroenterologist, Dr. Blank (*Id*. at 10–12), while assigning "great weight" to the opinion of consultant Dr. Kropsky, who examined the plaintiff only once (*Id*. at 13–16).

The RFC is the measurement of "the most [the applicant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). To determine an applicant's RFC, an ALJ must "assess [the] residual functional capacity based on all the relevant evidence in [the] case record." *Id*. The RFC is used to determine "if [the applicant] can adjust to any . . . work that exists in the national economy." 20 C.F.R. § 416.945(a)(5)(ii).

Because the plaintiff submitted his request for benefits before March 2017 (Tr. 45), the treating physician rule applies.  20 C.F.R. §§ 404.1527, 404.1520(c), 416.927(c)(2); *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5867–68 (Jan. 18, 2017).  The treating physician rule requires an ALJ to give "controlling weight" to the opinion of a doctor who has an "ongoing treatment relationship" with the applicant if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(a)(2), (c)(2).  "Controlling weight" means total deference unless the opinion is "not consistent with other substantial evidence in the record."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d. Cir 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)); 20 C.F.R. § 404.1527(d)(2)).

If the ALJ decides that an opinion is not entitled to controlling weight, he must determine how much weight, if any, to give the opinion.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  In reaching a determination, the ALJ must explicitly consider the following nonexclusive factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Id*. at 95–96 (quotation marks omitted) (alteration in original) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors [the factors listed above] when assigning weight at step two is a procedural error."  *Estrella*, 925 F.3d at 96 (citing *Selian*, 708 F.3d at 419–20; *see also* 20 C.F.R. § 404.1527(c) (The ALJ is required to "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [the applicant's] treating source's medical opinion.")  If the Commissioner has not provided "good reasons" for the assignment of weight of the medical opinions, remand is appropriate.  *Estrella*, 925 F.3d at 96.  Moreover, "ALJs should

not rely heavily on the findings of consultative physicians after a single examination." *Selian*,

708 F.3d at 419 (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)); *see also Roman v.*

*Astrue*, No. 10-CV-3085, 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012) (holding that

consultative examinations are not to be given substantial weight in overruling a treating

physician's opinion).  The ALJ did not discuss the first *Burgess* factor—"the frequen[cy], length,

and extent of treatment"— in his determination that  Dr. Blank's opinion merited only partial

weight and that the opinion of consultive examiner Dr. Kropsky, who examined the plaintiff only

once,  deserved "great weight."  (Tr. 25.)

    Dr. Blank opined the plaintiff would need to take two days off each month and spend

fifteen percent of each day "off task" because of his painful cramping and need for frequent

bathroom breaks.[1]  (Tr. 810–12.)  The ALJ concluded that this opinion was unsupported because

"the evidence in the record shows only episodic" symptoms after the plaintiff had bowel surgery

and "[that] evidence does not support Dr. Blank's opinion regarding the frequency of time of[f]

task and absenteeism."  (Tr. 25.)  The ALJ also cited an inconsistency in Dr. Blank's opinion

about how much time the plaintiff would need for bathroom breaks, and how often the plaintiff

would need to lie down at work.  The ALJ concluded the plaintiff would require no more than

one day of leave each month, based on his own assessment of the record.  (Tr. 21.)

---

[1] The plaintiff also asserts that the ALJ improperly calculated the plaintiff's RFC because he did not take
into account the plaintiff's ability to complete a probationary period.  (ECF No. 11 at 16–17.)  A
claimant's inability to complete a probationary period is relevant to an ALJ's disability determination.
*Sczepanski v. Saul*, 946 F.3d 152, 155 (2d Cir. 2020).  But *Sczepanski* does not apply to these facts.
Here, the VE testified only that the plaintiff could work in certain jobs if he did not need to be absent for
certain periods (Tr. 47–48); probationary periods were not raised at the hearing, and nothing in the
record addresses the extent to which the plaintiff could complete a probationary period.  The ALJ cannot
be faulted for failing to address a subject that no one raised.

As the ALJ observed, Dr. Blank wrote on the pre-printed form both that the plaintiff would need to lie down one or two times a year and to take unscheduled bathroom breaks one or two times a year; the answer to the bathroom breaks question was inconsistent with the doctor's other notation that the plaintiff would be "off task" for 15 percent of each day and absent for up to two days a month due to his Crohn's symptoms.  (Tr. 25, 811–12.)  But under these circumstances, the ALJ should have asked Dr. Blank for clarification.  Given the totality of the record, and the circumstances of the plaintiff's condition, Dr. Blank appears to have made a mistake in writing that the plaintiff would need unscheduled bathroom breaks only once or twice a year.  At the hearing, the plaintiff testified that he had to use the bathroom multiple times during the day and night.  In the latter half of 2018 alone, the plaintiff went to the emergency room three times for extreme pain and was treated with morphine—visits recorded in Dr. Blank's treatment notes.  (Tr, 673, 373, 655–56.)  "The duty to develop the record sometimes demands that ALJs re-contact treating sources for clarification."  *Edwards v. Berryhill*, No. 17-CV-298, 2018 WL 658833, at *8 (D. Conn. Jan. 31, 2018) (collecting cases); *Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *26 (E.D.N.Y. Sept. 28, 2017) (ALJ had duty to develop a record that lacked "explicit functional assessments by [] treating physicians" where medical evidence of physical capacity was inconsistent); *Fintz v. Kijakazi*, No. 22-CV-00337, 2023 WL 2974132, at *7 (E.D.N.Y. Apr. 15, 2023) (ALJ had duty to develop record where there was "[a]n inconsistency between the opinions of the only two examining experts brought on by one examiner's failure to provide a functional assessment").

Nothing else in the record contradicts Dr. Blank's assessment that the plaintiff would need frequent bathroom breaks for up to fifteen percent of the workday.  The ALJ pointed out that the plaintiff was in "remission, with only episodic flares of his disease, and mild

8

symptomology" (Tr. 22; *see also* Tr. 359, 361, 363, 365, 369, 371, 373, 376), but it is unclear

how the cycle of remission and flare ups was inconsistent with Dr. Blank's opinion.  The

plaintiff was repeatedly disabled by episodic flare-ups, which occurred throughout the period of

remission, and frequently hospitalized because of them.  (ECF No. 11 at 12.)  Dr. Blank's

assessment that the plaintiff needed two days off per month and would be off task fifteen percent

of each day is consistent with episodic symptoms.  (Tr. 812.)

Dr. Kropsky did not contradict Dr. Blank's opinion in this regard.  Dr. Kropsky focused

on the plaintiff's flexibility and whether he could perform certain physical tasks such as walking

and squatting, and did not express any opinion about the extent to which the plaintiff would need

to be absent from work.  To the extent that Dr. Kropsky discussed the plaintiff's general

condition, he was consistent with Dr. Blank.  Thus, Dr. Kropsky found that the plaintiff has

"moderate to severe pain at the level of 7/10," that the plaintiff "tires easily and often feels

weak" and that the plaintiff "is limited from activities which would require more than mild

exertion."  (Tr. 339, 342.)

The ALJ reasoned that Dr. Kropsky's opinions deserved great weight, in part because he

was knowledgeable about Social Security Administration eligibility requirements for disability

under Title XVI.  (Tr. 25.)  But Dr. Kropsky's opinions "primarily are medical in nature and not

couched in language unique to the Social Security program." *Ruiz v. Comm'r of Soc. Sec.*, No.

1:18-CV-09659, 2020 WL 728814, at *11 (S.D.N.Y. Feb. 13, 2020).  Nor did the ALJ explain

why "program knowledge" is more valuable than the treating physician's experience, especially

because Dr. Kropsky did not discuss whether the plaintiff's worst symptoms would require that

he be absent from work, which is the crux of the plaintiff's disability claim.  Indeed, the

plaintiff's flexibility or ability to squat is largely irrelevant to his Crohn's disease, which is what

he claims makes it impossible for him to work.  Because Dr. Kropsky did not address the question of absenteeism, his opinion is less relevant to determining the plaintiff's RFC.  The record does not "support a determination that a treating doctor's opinion is entitled to less than controlling weight." *Avrutskaya v. Comm'r of Soc. Sec.*, No. 18-CV-6267, 2020 WL 1550252, at *4 (E.D.N.Y. Mar. 31, 2020) (collecting cases) (finding that the ALJ erred in not giving a treating physician's opinion controlling weight and focused on perceived internal inconsistency in treating physician's treatment note, to the exclusion of other evidence in the record)  Because there is no material conflict between Dr. Blank and Dr. Kropsky, it was error for the ALJ to assign the treating physician only partial weight and Dr. Kropsky great weight.

Moreover, the Second Circuit has repeatedly emphasized that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419.  This is particularly true if a plaintiff's symptoms are episodic, as the plaintiff's symptoms are, because "a one-time snapshot of a claimant's status may not be indicative" of the patient's disability, *see Estrella*, 925 F.3d at 98, and there is a reliable opinion from a treating source in the record, *see Jakubowski v. Berryhill*, No. 15-CV-6530, 2017 WL 1082410 at *18 (E.D.N.Y. March 22, 2017).  The record shows that the period of remission was not symptom-free, nor "mild," as the ALJ characterized it.  (Tr. 22.)  On the contrary, the plaintiff had flare-ups throughout the period of remission, and the episodes were disabling enough to require repeated hospitalizations.  (ECF No. 11 at 13.)  Dr. Blank's opinion—based on his treating relationship with the plaintiff—that the plaintiff needed two days off each month and would be off task 15 percent of each day is consistent with the plaintiff's condition.  (Tr. 812.)  It was error for the ALJ to substitute his opinion—that the plaintiff's disability would require him to miss work only once each month—for Dr. Blank's opinion, especially where there was no other

10

medical opinion in the record on this topic.[2]  *Daniela B. v. Kijakazi*, No. 22-CV-03495, 2023 WL 3719634, at *6 (E.D.N.Y. May 30, 2023) ("An ALJ may not 'substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.'" (quoting *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015))).

Accordingly, remand is necessary so that the ALJ can reassess Dr. Blank's opinion, and seek clarification about the extent to which the plaintiff needs ready access to a bathroom and whether that affects the question of the plaintiff's absenteeism.

### CONCLUSION

For these reasons, the plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion is denied.  The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      August 21, 2023

---

[2] The ALJ also determined that the plaintiff's account of his subjective pain was not credible.  (Tr. 22–25, 41–42.)  "'The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence.'"  *Mollo v. Barnhart*, 305 F. Supp. 2d 252, 263–64 (E.D.N.Y. 2004) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)); *Fiumano v. Colvin*, No. 13-CV-2848, 2013 WL 5937002, at *9 (E.D.N.Y. Nov. 4, 2013) ("An ALJ is not required to accept a claimant's testimony regarding the severity and persistence of [her] symptoms as true, but rather can evaluate the credibility of a claimant to arrive at an independent judgment based on the medical findings and other evidence.").  Since I remand to the ALJ to reconsider the opinion evidence in the record and for additional factfinding, I decline to address the ALJ's evaluation of the plaintiff's subjective symptoms at this time.